**BATH IRON WORKS CORPORATION,**
**Plaintiff,**

v.

**CERTAIN MEMBER COMPANIES OF The INSTITUTE OF LONDON UNDERWRITERS, et al., Defendant.**

**Civ. No. 94–247–P–C.**

United States District Court,
D. Maine.

Dec. 13, 1994.

Mark L. Haley, Constance P. O'Neil, Arlyn H. Weeks, Conley, Haley, O'Neil & Kaplan, Bath, ME, for plaintiff.

John D. Gleason, Sidney St. F. Thaxter, David P. Silk, Curtis, Thaxter, Stevens, Broder & Micoleau, Portland, ME, Robin L. Main, Gregory L. Benik, Charles J. McGovern, Philip W. Noel, McGovern, Noel & Benik, Providence, RI, for defendants.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

GENE CARTER, Chief Judge.

Plaintiff Bath Iron Works Corporation ("BIW"), a Maine corporation with a principal place of business in Maine, originally brought this action for declaratory and monetary relief in the Maine Superior Court. Defendants, member companies of the Institute of London Underwriters and certain underwriters of Lloyd's of London (collectively, "Lloyd's"), filed a Notice of Removal of this matter to this Court (Docket No. 1–1). Now before the Court is BIW's Objection and Motion to Remand pursuant to 28 United States Code section 1447(c) (Docket No. 26). Upon review of the record and memoranda presented in this matter, the Court determines that it lacks jurisdiction over the dispute herein and remands the matter to the Maine Superior Court.

■ The issue presented on this motion is, for the purposes of determining the presence of diversity jurisdiction, whose citizenship should be considered? Although normally this is a rather straightforward determination, this case requires the Court to delve into the structure of Lloyd's of London, an institution, that is, without a doubt, *sui generis*. Accordingly, the traditional analysis for determining the citizenship of, for instance, a corporation or partnership is of limited assistance to the Court here. A brief description of the organization of Lloyd's assists in understanding the precise question presented by BIW's Motion to Remand.

Lloyd's of London is not an insurance company but, rather, a marketplace for investor-underwriters and those seeking insurance. Individual investors, known as "underwriters" or "Names," operate through "members' agents" who invest the Names' money in various "syndicates." Affidavit of Richard David Huson (Docket No. 30, Exhibit A) at ¶ 3–5.3 (hereafter "Aff."). It is these syndicates, which are simply groups of Names operating through a managing agent or active underwriter,[1] that underwrite all or, more commonly, a share of coverage for an insured. An active underwriter under the Lloyd's Agency Agreements Byelaw, must also be a member of the syndicate which he or she manages. Aff. at ¶ 15.2. The remaining Names in the syndicate delegate essentially full authority to the active underwriter to perform all underwriting functions, pay claims, and bring or defend lawsuits, and with the Names retaining no right or power to participate in underwriting. Aff. at ¶ 18.[2]

It is not disputed that, under British law, the syndicates themselves are not legally rec-

---

1. The Affidavit of Richard David Huson (Docket No. 30, Exhibit A) refers primarily to authority delegated by Names to "managing agents" who, in turn, appoint "active underwriters." Defendants' Memorandum of Law in Response to this Motion refers to both categories of agents. Since Defendants' affidavit and memorandum do not point to any significant difference between the two types of agents (if there is any to be found), and they apparently perform the same duties, any distinction has no bearing on the Court's disposition of the present matter. It appears from the pleadings that BIW is pursuing Names, both active and nonactive, without reference to any managing agents.

2. Several cases provide detailed summaries of the structure and operation of Lloyd's. *See, e.g., Honey v. George Hyman Constr. Co.,* 63 F.R.D. 443 (D.D.C.1974); *Daly v. Lime Street Underwriting Agencies Ltd.,* 2 FTLR 277 (Q.B.1987).

ognized persons having their own citizenship, as are corporations. Rather, the dispute is whether the citizenship of every Name within each syndicate implicated herein should be considered for the purposes of diversity jurisdiction or whether the Court should restrict its consideration to only the active underwriters. The two approaches produce different results here since, while there are no active underwriters who are residents of Maine, there are four Names who are residents (Defendants' Response to Request for Admission, Docket No. 26, Attachment A).

## I. ANALYSIS

Under the United States Constitution and federal law, federal courts have jurisdiction to hear and decide controversies between "citizens of different States" and between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). That jurisdiction, however, can be exercised only when there is "complete diversity" among all parties; that is, no plaintiff and no defendant may be citizens of the same state. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). When reviewing the citizenship of the parties, courts will disregard the citizenship of "formal or nominal" parties. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980). Generally, therefore, courts look to the "real parties in interest"[3] to determine whose citizenship will be considered for the purposes of diversity. *Id.* at 460, 100 S.Ct. at 1781; 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1556.

Complications are presented when one of the parties is an unincorporated association. Generally, a court will disregard the "entity's" citizenship (since noncorporations are not persons and therefore not citizens) and, instead, look to the citizenship of all of the members of the association. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990) (holding that to determine the presence of diversity where a limited partnership is a party, a court should look to the citizenship of limited, as well as general, partners); *see also, Nelson & Small, Inc. v. Polaris Indus. Partners, L.P.*, 768 F.Supp. 382 (D.Me.1989). Here, BIW has sued, not only "Certain Member Companies of the Institute of London Underwriters," but also the underwriters, active and nonactive, themselves.

Lloyd's argument is essentially that the only real parties-in-interest here are the active underwriters, who have complete control over the litigation and who act as representatives or agents for all of the Names. To support this approach, Lloyd's refers to case law that holds, that in some instances, a representative, and not the represented party, is the only real party-in-interest. In *Navarro*, the Supreme Court determined that the individual trustees of a business trust, rather than the trust's beneficial shareholders, were the real parties-in-interest for purposes of determining diversity jurisdiction. *Navarro*, 446 U.S. at 465, 100 S.Ct. at 1784. This Court, in *Maine v. Data General Corp.*, 697 F.Supp. 23 (D.Me.1988), held in an employment discrimination case brought by the State of Maine, that the state could properly be considered the real party-in-interest for purposes of determining diversity. The Court concluded that it did not need to consider the citizenship of the victim because, in that case, the state had power to control the litigation and it was protecting a quasi-sovereign interest, making the state the real party-in-interest. *Id.* at 25 n. 1.[4]

---

3. Although the term "real parties-in-interest" derives from Federal Rule of Civil Procedure 17(a), that rule in itself is not jurisdictional. The Supreme Court observed that there is a "rough symmetry" between the real party-in-interest standard of Rule 17(a) and the analysis used to determine diversity, "but the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 462 n. 9, 100 S.Ct. 1779, 1782 n. 9, 64 L.Ed.2d 425 (1980). *See also, Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir.1985).

4. Lloyd's concludes that this Court's holding in *Data General* was that, "the status of a representative, not the party on whose behalf the suit is brought, controls for purposes of determining diversity jurisdiction." Memorandum at 6. The posture of that case, however, is significantly different from that presented here. *Data General* involved an employment discrimination suit brought by the Maine Human Rights Commission, in which the victim of discrimination was *not a party* at all. The matter for this Court was not to decide *which*, as between the state and the

Lloyd's claims that *Navarro* and *Data General* support its argument that the active underwriters, as "representatives" of all Names in each syndicate, are the only real parties-in-interest here. In both *Navarro* and *Data General*, the courts analyzed whether the named plaintiffs were also real parties-in-interest and, therefore, the appropriate parties to consider to determine jurisdiction. Here, the proper focus of the Court is upon defendants, not plaintiffs, and it appears that both active and nonactive Names face potentially unlimited *liability* under their agreements with Lloyd's syndicates and insureds. In fact, it is the Names' investments and personal assets that may ultimately fund any settlement or judgment against Lloyd's. Furthermore, the Defendants have filed a counterclaim and a third-party complaint against BIW seeking declaratory and monetary relief. Accordingly, it would be absurd to conclude that the Names are merely "nominal or formal" parties in this litigation.

There is no question that the active underwriters are real parties-in-interest, but this Court can find no reason why, given that fact alone, they must be *the* real parties to the *exclusion* of all other Names. The Supreme Court in *Carden* noted with reference to unincorporated associations, "we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Carden*, 494 U.S. at 195, 110 S.Ct. at 1021. In other words, if BIW had sued the syndicates

(*i.e.*, artificial unincorporated entities) that provided the reinsurance policies, *Carden* requires this Court to look to every member of the syndicate for diversity purposes. Here, BIW has sued the Names directly, thus eliminated the need to do to analysis called for in *Carden*. Accordingly, it would be nonsensical to allow a different result for a plaintiff who sues the members of an entity rather than the entity as such.

■ Contrary to Lloyd's assertions, "control" is not a dispositive issue in determining who, among parties, is the real party-in-interest.[5] The Supreme Court in *Carden* specifically rejected a real party-in-interest approach which "looks to 'control over the conduct of the business and the ability to initiate or control the course of litigation.'" *Carden*, 494 U.S. at 193, 110 S.Ct. at 1020. This Court examined "control" in *Data General* only to determine that the named plaintiff was not merely a nominal party. *Data General*, 697 F.Supp. at 25 n. 1.

Lloyd's places great reliance on the recent decision of the United States Court of Appeals for the Sixth Circuit in *Certain Interested Underwriters v. Layne*, 26 F.3d 39 (6th Cir.1994), which held that, for purposes of diversity determinations, courts should look to the citizenship of the active underwriters only. However, this Court does not find the *Layne* opinion to be persuasive authority here.

In addition to a few somewhat minor distinctions,[6] this Court finds the approach and

victim, was the real party-in-interest, but *whether* the state could at all proceed as a real party-in-interest there.

The Court found that the state was not a nominal party since the state could sue in its own name and the action was brought to protect a "quasi-sovereign interest separate from the interest of an individual victim of discrimination." *Data General*, 697 F.Supp. at 25. Further, this Court indicated, in *dictum*, that "the state and the commissioner, as well as the individual victim of discrimination, are real parties in interest." *Id.* at 26.

5. Although Lloyd's is correct in stating that *Data General* held that the "representative is disregarded for diversity purposes when it has no power to control the litigation or to sue in its own name," that conclusion is of no help to Lloyd's position here. The reciprocal of that rule

is not that, where the representative *does* have such powers, the represented party is disregarded or that, if the represented party lacks such powers, it too should be disregarded. The reference in *Data General* applies *only* to representatives and cannot be applied to other parties. The comment by the Court was simply that, since representatives are generally not real parties-in-interest, the court will consider their status *only if* they possess certain control rights not usually exercised by representatives in litigation.

6. For instance, in *Layne* the procedural posture was different and the roles of the parties was reversed. The action was filed by the Lloyd's underwriters, who obtained a judgment, and the defendants appealed the judgment on the basis of inadequate jurisdiction. Here, by contrast, the Lloyd's Names are defendants seeking removal to

conclusion in *Layne* to be unnecessarily artificial. To resolve the issue on appeal, the Sixth Circuit panel used an agency analysis and concluded that the "underwriters" (referring to active underwriters only) function as agents for an undisclosed principal, the syndicate. *Id.* at 43. The court, however, failed to note that "syndicates" are not recognized as legal entities under British law. The syndicates are simply groups of several Names, one of whom performs duties on his or her behalf as well as the behalf of others.[7] Accordingly, the principals are the Names, not the syndicates.

There is no question that the active underwriters are liable on the policies they underwrite since they are Names themselves. Overlooking this clear liability which exists on the face of the agreements, the *Layne* court follows an "undisclosed principal" formula, to conclude that the active underwriters are liable. The court found that, since a third party may sue the agent or the undisclosed principal but not both under Tennessee law, once a suit is instituted against the active underwriters (*i.e.*, the agents),[8] "the syndicates, as principal . . . [are] no longer liable." *Id.*[9] This cumbersome analysis is inapplicable here since BIW is suing both the agents and principals by suing all "underwriters," both active and nonactive, as a

group. No such "choice" between agent and undisclosed principal has been made.

This court agrees with *Layne*, however, that these cases present an agency matter, and rejects Lloyd's attempts to characterize the relationship between the active and nonactive underwriters as that of trustee and beneficiary. Lloyd's makes such an argument to benefit from *Navarro*'s suggestion that a trustee is the only true party-in-interest. The error in this analogy is that, unlike trust beneficiaries, the names here are *investors*, who face unlimited liability for their shares of the syndicates. Further, the Lloyd's agreements do not make a legal/equitable interest distinction as was presented in *Navarro*. *See Carden*, 494 U.S. at 194, 110 S.Ct. at 1020–21 ("[*Navarro*] . . . is irrelevant [to the issue of whether 'control' determines who is a real party in interest], since it involved not a juridical person but the distinctive common-law institution of trustees.")

In short, the required analysis here is far less complicated than that followed by the Sixth Circuit or argued for by Lloyd's. The Names were appropriately named as defendants here since they are potentially liable; accordingly, the citizenship of each defendant (*i.e.*, each Name) should be considered for diversity purposes.

---

this Court. Also, the court was applying certain aspects of the Tennessee law on agency, with which there are no comparable rules in Maine.

7. The Court *notes* an interesting juridical sidelight on which the Court may not rely because the decision is "unreported." *See Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 523 n. 5 (1st Cir.1988). A Magistrate's Report to the United States Court for the Northern District of Illinois concluded in a case, with an issue essentially identical to that presented here,

when persons having actual interests in a controversy are represented by an individual who likewise has an interest, the representative party will be deemed to be have [sic] the citizenship of each person he represents. Since there are Illinois residents among the underwriters represented by the responding managing underwriters there is no diversity between [plaintiff] and the syndicates.

*International Insurance Company v. Certain Underwriters at Lloyd's London*, 1991 U.S.Dist. LEXIS 12937, *25 (N.D.Ill.1991). *See also, Honey*, 63 F.R.D. at 447; *Cassidy v. Forum Insurance Co.*, 204 Ill.App.3d 196, 149 Ill.Dec. 471, 561

N.E.2d 1167 (1990) (holding that active underwriter, a Name himself, may bring an action on behalf of himself and other Names.).

8. The *Layne* court concludes that the counterclaim against "Certain Interested Underwriters at Lloyd's" was a claim against the active underwriters only. Since the terms "underwriter" and "Name" are synonymous, as this Court understands, there is no reason to draw such a conclusion on that basis alone. A review of the Amended Complaint in the present case demonstrates that BIW clearly intended to sue not only the active underwriters, but all the Names in the relevant syndicates.

9. Without reaching the issue of whether Names are appropriately characterized as undisclosed principals, this Court questions the extension of the law of joint liability to the conclusion that, a plaintiff's *choice* to sue the agent will completely *terminate* liability for the principal. The Court can find no authority for this conclusion under Tennessee law, the Restatement (Second) of Agency, or the law of Maine.

8

Since complete diversity among Plaintiffs and Defendants is lacking, this Court lacks jurisdiction over the subject matter presented here. Accordingly, Plaintiff's Motion to Remand is *GRANTED*.

So *ORDERED*.