Timothy Maxwell **HUMM**, an Underwriter at Lloyd's of London on behalf of himself and all interested Underwriters under Policy No. MB6807/7000, Plaintiff,

v.

**LOMBARD WORLD TRADE, INC., Defendant,**

v.

Timothy Maxwell **HUMM**, Lowndes Lambert Cargo Limited, and John Does 1 through 50, fictitious names being and intending to be all persons having liability under Lowndes Lambert Cover Note No. MB6807/7000, to be named individually when identified, Counterclaim Defendants.

No. 94 Civ. 3470(AGS).

United States District Court,
S.D. New York.

Feb. 13, 1996.

In addition, third party defendant Lowndes Lambert Cargo Ltd. moves to dismiss Lombard's claim against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND

On or about November 21, 1988, Lombard became insured under a policy of marine cargo insurance with Lloyd's, London ("Lloyd's"). Plaintiff Timothy Maxwell Humm ("Humm") is a lead underwriter of the insurance policy issued to Lombard, who brings this action "on behalf of himself and all interested Underwriters under Policy No. MB6807/7000." Complaint ¶ 2.

Policy No. MB6807/7000 (the "Policy") contained a storage clause which covered risks of physical loss for coffee stored at various warehouses in the United States. In 1991, Lombard made a claim under the Policy for the loss of approximately 7,971 bags of coffee in the amount of $885,475.76, alleged to have been stolen while in storage at the Thor Warehouse in Texas. While the claim was under investigation by the Policy underwriters, the parties agreed that the underwriters would loan to Lombard 67% of its claim "on account", amounting to $593,268.76. Humm alleges that the underwriters' investigation revealed that only 2,499 bags of coffee, worth $278,567.00, were ever delivered to Thor Warehouse for Lombard and that the remaining 5,472 bags of coffee never existed except on fraudulent warehouse receipts issued by Thor Warehouse as part of a scheme to defraud Lombard.

Humm and the other underwriters deny liability for such non-existent goods on the basis that the Policy covered only physical loss or damage and does not include coverage for spurious warehouse receipts. After the investigation, the underwriters demanded that Lombard return to them $314,701.76, which is the excess of the loan over the value of the coffee proven to have been in existence. Upon Lombard's refusal to return the funds demanded, Humm brought this action.

Lombard brings counterclaims against Humm and joins as counterclaim defendants Lowndes Lambert Cargo Limited ("Lowndes

Hill Rivkins Loesberg O'Brien, Mulroy & Hayden, New York City, for Plaintiff.

John J. Witmeyer III and David A. Beke, Ford Marrin Esposito Witmeyer & Gleser, New York City, for Defendant Lombard & Co., Inc. (f/k/a Lombard World Trade, Inc.).

Mendes & Mount, New York City, for Counterclaim Defendant Lowndes Lambert Cargo Limited.

## AMENDED OPINION & ORDER

SCHWARTZ, District Judge:

This action is before the Court on defendant Lombard & Co., Inc.'s (formerly known as Lombard World Trade, Inc.) ("Lombard") motion to dismiss the complaint for lack of subject matter jurisdiction, failure to join indispensable parties and lack of standing.

Lambert") and John Does 1 through 50, representing all persons having liability under the Policy. Lowndes Lambert is an insurance broker, incorporated under the laws of England, that insures risks with underwriters on the insurance market operated by Lloyd's. Lowndes Lambert allegedly issued the Policy to Lombard, which Policy referenced unnamed underwriters at Lloyd's as the underwriters of the insured risks. Lombard claims that by issuing the Policy for the account of the underwriters, Lowndes Lambert became liable to Lombard for all risks insured by the Policy.

Lombard alleges, in part, that the counterclaim defendants unconscionably failed to pay Lombard $292,207.00 of its claimed loss, acted in bad faith in not effectuating a prompt, fair and equitable settlement of Lombard's claim, engaged in unfair and deceptive trade practices, and breached their duty of good faith and fair dealing. Lombard seeks compensatory damages in the amount of $292,-207.00, trebled in accordance with Texas law, interest on the compensatory damages, exemplary damages in the amount of $5,000,-000.00, and its costs and disbursements.

Relevant to Lombard's motion to dismiss the complaint for lack of subject matter jurisdiction is the nature and structure of insurance underwriting at Lloyd's. Lloyd's itself does not underwrite insurance. Rather, Lloyd's operates as a marketplace where large numbers of individual investors buy and sell insurance risks. These individual investors are referred to as "Names" and operate as members of syndicates. The Names invest funds and pledge their assets as security for insurance risks which have been accepted in the Lloyd's market. Affidavit of Graham Baxter, dated November 16, 1994 ("Baxter Aff."), at ¶ 3. According to plaintiff, the Names do not actively participate in the business of underwriting risks, but instead appoint a managing agent who manages the syndicate pursuant to a Managing Agent's Agreement. The managing agent in turn appoints and employs an active underwriter to underwrite risks for the syndicate. Id. An active underwriter under the Lloyd's Agency Agreements Bylaw must also be a member of the syndicate (Name) for which he or she will accept the risk on insurance policies. See Bath Iron Works Corp. v. Certain Member Companies of the Institute of London Underwriters, 870 F.Supp. 3, 4 (D.Me.1994). There can be a few to thousands of Names, each of whom subscribes to a small fraction of the insurance risk. The Names are severally (not jointly) liable to the insured for their fraction of the risk. Defendant's Memorandum in Support of Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Standing ("Defendant's Mem. of L.") at 7.

A total of fifty-six syndicates participated in underwriting the Policy issued to Lombard. Baxter Aff. at ¶ 6; see also Baxter Aff. Ex. C (chart of participating syndicates showing the syndicate code, percentage of risk under the Policy, underwriter, managing agent and number of Names). Plaintiff states that, according to an internal review, there were in excess of 80,000 Names who participated as investors in the Policy as members of the fifty-six syndicates. Baxter Aff. at ¶ 7. According to plaintiff's review of the pertinent records maintained at Lloyd's, over one hundred Names whose syndicates accepted risk on the Policy have New York mailing addresses. Thus, for purposes of defendant's motion to dismiss, plaintiff accepts that at least one of the Names is a citizen of New York. Plaintiff's Memorandum of Law in Opposition to Motion of Defendant, Lombard World Trade Inc. to Dismiss the Complaint ("Plaintiff's Mem. of L.") at 4, n. 1.

Each syndicate has a managing agent who acts on behalf of the syndicate members (the Names) in insuring risks. Hiscox Syndicates Ltd., the managing agent of syndicate number 0625, which is also known as the T.M. Humm syndicate, appointed Humm to act as "senior active underwriter", or "leading underwriter", for that syndicate. Baxter Aff. at ¶¶ 2, 5. As a leading underwriter for syndicate 0625, Humm has the power to accept risks on behalf of the syndicate, settle and pay claims, and commence lawsuits in his own name for the syndicate. Id. at ¶ 6. Graham Baxter, who is also an underwriter for syndicate 0625, also possesses such powers on behalf of his syndicate and states that

he "exercised this power when [he] accepted the Lombard risk on behalf of the syndicate by initialling the slip." *Id.* at ¶ 6. Presumably, the underwriters who accepted the risk under the Policy for the other fifty-five syndicates (whether they have been appointed the "senior active" or "leading" underwriter or not) have the same or similar powers pursuant to a Managing Agent's Agreement—assigned to them by the syndicate's managing agent. *See id.* Ex. A (Standard form Managing Agent's Agreement). Humm purports to represent "all interested underwriters" under the Policy. To Humm, this apparently means the underwriters of the other fifty-five syndicates who accepted the risk for their syndicates. *See id.* Ex. C (chart identifying leading underwriters). These underwriters, in turn, represent the interests of the members of their syndicates. Lombard, on the other hand, argues that the Names are the true parties interested under the Policy because they are severally liable. *See id.* Ex. A, §§ 7.1, 8 at 43, 45. No other underwriter or Name, whether in an individual or representative capacity, has been joined as a plaintiff in this action.

*DISCUSSION*

■ Humm asserts jurisdiction under 28 U.S.C. § 1332, based upon the diversity of the parties and the matter in controversy exceeding $50,000.00. Complaint at ¶ 1. Lombard moves to dismiss the complaint for lack of subject matter jurisdiction based on the fact that Humm concedes that at least one of the Names was a citizen of New York State when this action was commenced. In addition, Lombard argues that Humm does not properly represent all interested underwriters under the Policy, since he does not own the substantive rights to the entire Policy, and urges that the action should be dismissed for failure to join indispensable parties.[1]

Lombard is a Delaware corporation with its principal place of business in New York, which makes it a citizen of both Delaware and New York. *See* 28 U.S.C. § 1332(c)(1).

Lombard argues that, in order for the Court to have jurisdiction over this action pursuant to 28 U.S.C. § 1332, there must be complete diversity between it and each Name who invested in the Policy and that each Name must have a claim which exceeds $50,000.00. Humm submits that since the Names do not participate in the actual business of underwriting, but rather designate the managing agent of their syndicates to act on their behalf, their citizenship is irrelevant to a determination of diversity. The only real parties in interest, Humm asserts, are himself and the other underwriters who accepted liability under the Policy for their syndicates. In sum, Humm brings this suit on behalf of all interested underwriters under the Policy; however, he urges the Court to look only to his own citizenship, which would provide the Court with alienage jurisdiction under 28 U.S.C. § 1332(a)(2) since he is a citizen of the United Kingdom, and to find that all of the underwriters have a "common and undivided interest, vis-a-vis Lombard, in the amount [of $314,701.76] although as among themselves the interest is separable." Plaintiff's Mem. of L. at 14.

■ District courts have original jurisdiction where the matter in controversy exceeds $50,000 and is between citizens of different States, or citizens of a State and citizens of a foreign state. 28 U.S.C. 1332(a)(1) & (2). When diversity is asserted as the basis for jurisdiction, it must be complete. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The burden of showing complete diversity falls upon the party claiming section 1332 jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). "[C]itizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controver-

---

1. Lombard also argues that Humm failed to plead facts establishing alienage or diversity jurisdiction in the complaint. The Court finds it unnecessary to reach this issue but notes that, if the complaint were found to be defective, it would grant leave to amend the complaint so as to cure this defect. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts").

sy." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980) (internal quotations and citations omitted); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 188, n. 1, 110 S.Ct. 1015, 1018, n. 1, 108 L.Ed.2d 157 (1990) (the question "which of various parties before the Court should be considered for purposes of determining whether there is complete diversity of citizenship ... will generally be answered by application of the 'real party to the controversy' test"); *Bath Iron Works*, 870 F.Supp. at 5 ("courts look to the 'real parties in interest' to determine whose citizenship will be considered for the purposes of diversity").

Humm relies on the Sixth Circuit's decision in *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39 (6th Cir.1994). In *Layne*, the plaintiffs, Lloyd's underwriters of the defendants' fire insurance policy, sought a declaratory judgment denying coverage. On appeal, the Sixth Circuit was faced with the issue of whether the district court had properly exercised diversity jurisdiction, given that the defendants and possibly some of the syndicate members represented by the plaintiffs were citizens of Tennessee. The Court held that, under Tennessee law, the underwriters, and not the Names, were the real parties in interest, noting that the underwriters "are liable on the contract[,] ... actually wrote the insurance, processed the claim, and are authorized to sue on the policy." *Layne*, 26 F.3d at 43. The Sixth Circuit based its holding, in large part, on the following observations:

> Tennessee follows the venerable common law rule that an agent for an undisclosed principal is personally liable on a contract.... A party who deals with such an agent may sue either the principal or the agent, but not both. When the defendants elected to sue the underwriters, they elected to sue the agent. The syndicates, as principal, therefore, were no longer liable to the defendants on the contract and, consequently, are not real parties in interest. Although initially there might have been a question whether the defendants elected to sue the agents since the suit originated as a declaratory judgement [sic]

action brought by the underwriters, the defendants' counterclaim against "Certain Interested Underwriters at Lloyd's, London, England" seems to be a clear election to sue the agent.

*Id.* at 43–44 (citations omitted).

This key portion of the decision has since been criticized and distinguished at the district court level. *See, e.g., Bath Iron Works Corp.*, 870 F.Supp. at 7 & n. 1 (finding the "approach and conclusion" in *Layne* to be "unnecessarily artificial" and that "the court was applying certain aspects of the Tennessee law on agency, with which there are no comparable rules in Maine"); *Transamerica Corp. v. Reliance Ins. Co.*, 884 F.Supp. 133, 139 (D.Del.1995) (criticizing the distinction between the active underwriters and Names as "unnecessarily artificial"); *see also Lowsley–Williams v. North River Ins. Co.*, 884 F.Supp. 166, 171 (D.N.J.1995) (finding that since parties stipulated that Names were personally liable on the contracts, they were real parties in interest). We find that the decision in *Layne* is distinguishable based on several factors.

■ First, addressing *Layne*'s agency reasoning head-on, we find that, although under New York law an agent is personally liable for a contract executed on behalf of an undisclosed principal, *Broser v. Royal Abstract Corp.*, 49 Misc.2d 882, 883, 268 N.Y.S.2d 594, 595 (N.Y.Sup.1966), the Names were not undisclosed principals. Delving deeper into the law of agency, it becomes clear that if the party making a contract with an agent is on notice that the agent is acting for a principal, then the principal is "partially disclosed" and the agent is not liable. *See Instituto Cubano De Estabilizacion Del Azucar v. The SS Theotokos*, 155 F.Supp. 945, 948 (S.D.N.Y.1957); *see also* Restatement (Second) of Agency § 4 (1958). Thus,

> [n]owhere does the law specifically require that the name of the principal must be disclosed; rather, it requires that the 'identity' of the principal must be disclosed.... *[I]f the agent gave such information that a reasonable person in the light of the surrounding circumstances would have understood that the agent was*

*acting for a principal indicated, though not named, the contract is with the principal and not with the agent.*

*Id.* at 947–48 (internal quotations and citations omitted) (emphasis supplied); *see also* Restatement (Second) of Agency § 9 cmt. d (1958) ("A person has reason to know of a fact if he has information from which a person of ordinary intelligence ... would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care ..., his action would be predicated upon the assumption of its possible existence").

The Cover Note to the Policy executed by Lowndes Lambert, as a Lloyd's broker, and Lombard states: *"UNDERWRITERS:* 100% LLOYD'S".* Declaration of John J. Witmeyer III, Esq., dated October 13, 1994 ("Witmeyer Dec."), Ex. D at 10. Neither Lowndes Lambert nor the underwriters who initialled the slip on the Policy professed to be acting solely on their own behalf. This term of the Cover Note informed Lombard that all underwriters of the Policy would be underwriters associated with Lloyd's. The question then becomes, would a reasonable person seeking insurance in the Lloyd's marketplace be aware that the underwriters were acting on behalf of underwriting syndicates and their investors, the Names? It is at least arguable that, given the nature and structure of insurance underwriting at Lloyd's, knowledge of which may justly be imputed to a customer of that market, this stated term of the Cover Note put Lombard on notice that the underwriters were acting on behalf of themselves, as underwriters, *and* the syndicate members, as investors. *See Windward Traders v. Fred S. James & Co. of N.Y., Inc.,* 855 F.2d 814, 820 (11th Cir. 1988) (agent adequately identified insurers as 42.648% "effected with: Underwriters of Lloyds", so that insured had constructive notice of principals' identity); *but see Ell Dee Clothing Co., Inc. v. Marsh,* 247 N.Y. 392, 398, 160 N.E. 651 (1928) (where principals were not known to insured and no such principals existed when the binder was signed, agent was liable on contract).

Second, the Court in *Layne* considered significant the fact that the defendants had "elected to sue the agents" when they brought their counterclaim against "Certain Interested Underwriters at Lloyd's, London, England", the plaintiffs. In this case, there was no such election. Humm brought this action as the sole plaintiff, purporting to represent all those interested under the Policy. Lombard brought a counterclaim against not only Humm, but also Lowndes Lambert and "John Does 1 through 50, fictitious names being and intending to be all persons having liability under the Lowndes Lambert Cover Note No. MB6807/7000 to be named when identified." In bringing its counterclaim against John Does 1 through 50, Lombard elected to sue "all interested underwriters, including all syndicate members," even though these undoubtedly number more than fifty. Defendant's Reply Mem. of L. at 7. Thus, in this case, defendants did not elect to sue only the agents, as the Court in *Layne* determined, and such an election does not support the finding that the Names are no longer liable on the Policy.

Third, plaintiffs in *Layne* were Certain Interested Underwriters at Lloyd's, London, England under the policy insuring the defendants in that action. Presumably, these were all of the underwriters who accepted the risk under the policy in question for their syndicates. There is no indication that the *Layne* plaintiffs purported to represent any other underwriters (other than members of their own syndicates) interested under the defendants' policy; whereas, in this case, Humm sues as the sole plaintiff on behalf of himself and all interested underwriters under the Policy. As the Court in *Layne* noted, Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." F.R.C.P. 17(a). "Under the rule, the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." *Layne,* 26 F.3d at 42–43.

Humm claims that he and the other underwriters who accepted the risk for their syndicates under the Policy are the real parties in interest, and that he represents such underwriters. Assuming for the moment that Humm and the other underwriters are

the real parties in interest under Rule 17(a), to the exclusion of the Names, we first briefly examine the evidence Humm has presented to demonstrate that he represents the other underwriters.[2]

Humm states in his affidavit that he "ha[s] been authorized by all of the underwriters who have accepted the risk under The Policy to commence suit on their behalf to recover an overpayment of monies given to Lombard as detailed in the complaint filed with the court. The underwriters, as such, will be bound to whatever may be the ultimate judgment of the court." Affidavit of Timothy Maxwell Humm, Esq., dated November 17, 1994, ¶ 5. Humm submits no supporting documentation to show that he properly represents the underwriters of the other fifty-five syndicates, who, in turn, represent the Names of those syndicates. There is no evidence in the record that Humm owns the substantive rights to the entire Policy; rather, he apparently represents one of fifty-six syndicates whose Names are liable under the Policy. Nor is there any evidence or affirmation in the record that the managing agents for the other fifty-five syndicates have in effect Managing Agent's Agreements with their respective Names.

Humm does not bring this suit as a class action. Rather, he claims to act as an agent of the numerous underwriters interested under the Policy. Humm states that "[a]ll of the underwriters who accepted the risk are present before the Court through their agent, Mr. Timothy M. Humm." Plaintiff's

Mem. of L. at 12. Having presented no evidence in support of his status as agent of the other underwriters, the Court cannot presume that such exists.[3] *See John L. Walker Co. v. National Underwriters' Co.*, 3 F.2d 102, 103 (7th Cir.1924).

Turning to the question of who are the real parties in interest in this action, we disagree with the *Layne* Court's statement that "the underwriters are 'real parties in interest' because they are liable on the contract." *Layne*, 26 F.3d at 43. The Sixth Circuit based this conclusion on two factors: 1) as agents for undisclosed principals, the underwriters were liable, and 2) the underwriters "actually wrote the insurance, processed the claim, and are authorized to sue on the policy." *Id.* As noted above, we find the first factor unpersuasive. The second factor, in essence, relies on a real-party-in-interest approach which looks to control as the determining element. The Supreme Court in *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), specifically rejected this approach, which "looks to control over the conduct of the business and the ability to initiate or control the course of litigation." *Id.*, 494 U.S. at 193, 110 S.Ct. at 1020; *see also Bath Iron Works*, 870 F.Supp. at 6 ("Contrary to Lloyd's assertions, 'control' is not a dispositive issue in determining who, among parties, is the real party-in interest").

We agree with the other district courts which have found, in similar cases involving Lloyd's, that the Names are the real parties

2. With regard to Humm's representation of the members of syndicate 0625, we note that Humm has submitted to the Court an unexecuted standard form Managing Agent's Agreement which sets forth the responsibilities and liabilities of the managing agent and Names. Such an agreement may well have been made between Hiscox Syndicates Ltd., the managing agent of the T.M. Humm Syndicate and the members of that syndicate; however, a signed copy of such an agreement has not been provided to us. Section 5(q) of the standard form Managing Agent's Agreement provides that the Managing Agent has the power "to take in any part of the world, and in such name or names as the Agent thinks fit (whether or not including that of the Name), such legal or other proceedings as the Agent considers necessary or expedient for the purposes of or in connection with the Underwriting." Baxter Aff. Ex. A. at 42. Thus, assuming

that this is the form of agreement made between the Names in Humm's syndicate and the managing agent (who then appointed Humm as the leading underwriter for the syndicate), it provides that Humm may bring an action on behalf of the Names in the T.M. Humm syndicate who are liable under the Policy. These number 802. *See id.* Ex. C.

3. Moreover, even if we were to find that Humm properly represented the other underwriters, and they in turn the Names, "[i]t has generally been held that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists." *Lowsley–Williams v. North River Ins. Co.*, 884 F.Supp. at 172 (quoting *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir.1990)).

in interest because they are severally liable for the syndicates' risk under the Policy.[4] See Bath Iron Works, 870 F.Supp. at 7 ("The Names were appropriately named as defendants here since they are potentially liable; accordingly, the citizenship of each defendant (i.e., each Name) should be considered for diversity purposes"); Transamerica Corp. v. Reliance Insurance Company of Ill., 884 F.Supp. at 139 (following Bath Iron Works); Lowsley–Williams v. North River Insurance Co., 884 F.Supp. at 171 ("it is not the Underwriter but the Names who are personally liable on the contracts, it is therefore the Names who are the real parties in interest in this lawsuit"); see also The Chase Manhattan Bank, N.A. v. Aldridge, 906 F.Supp. 870, 872 (S.D.N.Y.1995) ("the Names are personally liable for any of the syndicate's losses").

The standard form Managing Agent's Agreement submitted by Humm provides that the Names are responsible for ensuring that there are "available sufficient funds . . . to enable [the Agent] to pay all claims and all necessary and reasonable expenses and outgoings made or incurred in connection with the Underwriting and shall comply with any request made by the Agent to make such funds available. . . ." Baxter Aff. Ex. A, § 7.1(a); see also id., § 8.3. Each Name is liable for his or her portion of the risk accepted by the syndicate. Id., § 13.2 ("There shall be attributed to the Name . . . the same proportion of the risks underwritten by the Agent on behalf of the members of the Managed Syndicate and allocated to a year of account as the amount of the Name's member's syndicate premium limit in relation to the Managed Syndicate for that year of account bears to the syndicate allocated capacity of the Managed Syndicate for that year of account, in each case as specified in the initial syndicate constitution filed with Lloyd's at or about the beginning of the relevant year").

We reject Humm's assertion that the Supreme Court's decision in Navarro Savings Ass'n v. Lee, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), supports the contention that he and the other underwriters are the only real parties in interest. In Navarro Savings Ass'n, supra, the Supreme Court held that the trustees of a business trust, rather than the trust beneficiaries, were the real parties in interest in a breach of contract action. However, Lloyd's syndicates bear no resemblance to trusts. Rather, "unlike trust beneficiaries, the names here are investors, who face unlimited liability for their shares of the syndicates." Bath Iron Works, 870 F.Supp. at 7; see also The Chase Manhattan Bank, N.A. v. Aldridge, 906 F.Supp. at 872 and cases cited therein ("While counsel for Lloyd's has urged this Court to accept a 'trust' theory, under which the citizenship of 'Lloyd's' would be measured only by the citizenship of the representative or active underwriter, every recent case addressing this issue has rejected the defendant's suggestion of a trust theory and has concluded that the citizenship of a Lloyd's syndicate is measured by the citizenship of the individual Names who are responsible for their proportional share of the specific insurance in question"). Thus, the Supreme Court's holding in Navarro Savings Ass'n is inapposite.

We find that the Names are not nominal parties, but are real parties in interest. Moreover, for Humm to assert that he represents only the underwriters who accepted the risk under the Policy, but not the Names which he and those underwriters, in turn, represent, is illogical. Humm concedes as much when he states, "[a]ny judgment for or against the underwriters will bind not only the underwriters but their principals, the syndicates." Plaintiff's Mem. of L. at 12–13. Thus, the Names are before the Court, and, as real parties in interest, their citizenship must be examined in determining diversity jurisdiction. See Navarro Savings Ass'n, 446 U.S. at 460–61, 100 S.Ct. at 1781–82; 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3606, n. 6 (1984). Since it is conceded that at least one Name was a citizen of New York when this action was commenced, di-

---

**4.** This means that the underwriters, including Humm, are also real parties in interest because they too are Names. However, we agree with the Court in Bath Iron Works that there is no reason why the underwriters must be the real parties in interest to the exclusion of all other Names. Id., 870 F.Supp. at 6.

versity is not complete. Accordingly, the Court lacks subject matter jurisdiction over the action, and it must be dismissed.

This result is consistent with *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), in which the Supreme Court found that an unincorporated association has no separate legal identity, and that for purposes of diversity jurisdiction, its citizenship is the citizenship of each of its members. Lloyd's syndicates are not recognized as legal entities under British law. *Bath Iron Works*, 870 F.Supp. at 7. They consist of Names grouped together in artificial entities. As such, the Court must consult the citizenship of all of their members in determining diversity jurisdiction. *Carden v. Arkoma Associates*, 494 U.S. at 195, 110 S.Ct. at 1021 ("In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members").

Finally, the Court lacks subject matter jurisdiction because no individual Name's claim against Lombard satisfies the jurisdictional amount requirement of Title 28, United States Code, Section 1332(a). Humm seeks a total of $314,701.76. No one syndicate accepted more than 4.53% of the risk under the Policy. Each syndicate has hundreds, if not thousands, of members. *See* Baxter Aff. Ex. C. Humm concedes that no one syndicate or Name has a claim that exceeds $50,000.00, but he urges the Court to aggregate the amounts allegedly due each syndicate because the underwriters have a "common and undivided interest" which is "separable as between themselves." Plaintiff's Mem. of L. at 15 (citing *Eagle Star Ins. Co. v. Maltes*, 313 F.2d 778, 780 (5th Cir. 1963), and *Clay v. Field*, 138 U.S. 464, 11 S.Ct. 419, 34 L.Ed. 1044 (1891)). Lombard argues that since the Names are severally liable, their claims cannot be aggregated.

In *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942), the Supreme Court stated

> Aggregation of plaintiffs' claim cannot be made merely because the claims are derived from a single instrument or because

the plaintiffs have a community of interest.... In a diversity litigation the value of the "matter in controversy" is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation.

*Id.*, 315 U.S. at 447, 62 S.Ct. at 675–76 (citations omitted). The pecuniary consequence to the Names is determined by the fact that they are severally liable under the Policy. Each Name has a distinct claim against Lombard for that portion of the risk it bears, and Lombard has a distinct claim against each Name pursuant to its counterclaim. In *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir.1968), *cert. denied*, 394 U.S. 988, 89 S.Ct. 1470, 22 L.Ed.2d 763 (1969), the Seventh Circuit stated,

> [T]he pecuniary test of jurisdiction depends on whether the potential liability of the insurer is joint or several. If joint, the matter in controversy between the insurer and the defendants is the sum of the potential claims. On the other hand, if the insurer's potential liability is several, jurisdiction under section 1332(a) can be sustained only against those defendants whose respective controversies individually involve matters exceeding the jurisdictional amount.

*Id.* at 513; *see also The Chase Manhattan Bank, N.A. v. Aldridge*, 906 F.Supp. at 876 ("there is not a sufficient jurisdictional amount at issue for any of the Names to pursue the counterclaim individually"); *Niagara Fire Ins. Co. v. Dyess Furniture Co., Inc.*, 292 F.2d 232, 233 (5th Cir.1961) (As "they are each proportionately and severally liable for the loss at the ratio which the amount of their respective policies bears to the whole insurance ... their claims cannot be aggregated to make up the jurisdictional amount").

Humm submits that, although the insurers' liability under the Policy is several, "when an assured presents a claim he does not file with each underwriter expecting to be paid only that underwriter's portion. On the contrary, the claim is presented as one claim and paid to the assured in that manner." Plaintiff's Mem. of L. at 16. We find this procedural matter unpersuasive. The fact remains that the Names are severally liable for their pro-

portionate share of the loss on the Policy. Thus, their claims are separate and distinct and may not be aggregated. *See* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14A Federal Practice and Procedure § 3704 ("Even when the claims arise from a single instrument or the parties have a community of interest ... separate and distinct claims still cannot be aggregated"). Accordingly, the jurisdictional amount required by 1332(a) is not met, and the action must be dismissed for lack of subject matter jurisdiction.

Lombard's counterclaim against Humm, Lowndes Lambert and John Does 1 through 50 suffers from the same jurisdictional infirmities as plaintiff's claim. Accordingly, it, too, must be dismissed for lack of subject matter jurisdiction. Lowndes Lambert's motion to dismiss the counterclaim for lack of personal jurisdiction, therefore, is moot.

*CONCLUSION*

For the reasons stated above, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is granted. Lowndes Lambert's motion to dismiss the counterclaim is moot. The Clerk of the Court is directed to dismiss both the claim and the counterclaim and close the case.

SO ORDERED.