**ADVANI ENTERPRISES, INC.,**
**Plaintiff–Appellant,**

**v.**

**UNDERWRITERS AT LLOYDS**
**and Syndicate 735 at Lloyds of**
**London, Defendants–Appellees.**

**No. 726, Docket 97–7664.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1997.

Decided March 20, 1998.

Steven L. Barkan, Armand Mele, (Lambos & Junge, New York City), for Plaintiff–Appellant.

James W. Carbin, (Donovan Parry Carbin McDermott & Radzik, New York City), for Defendants-Appellees.

Before FEINBERG and WALKER, Circuit Judges, and GOLDBERG,* Judge.

GOLDBERG, Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, granting a motion for summary judgment in favor of defendants-appellees Underwriters at Lloyd's and Syndicate 735 at Lloyd's of London (collectively the "Underwriters"). Plaintiff-appellant Advani Enterprises, Inc. ("Advani") commenced this action in the district court, invoking diversity jurisdiction, to contest the Underwriters' denial of its claim for losses under a marine cargo insurance policy. The district court granted summary judgment in favor of the Underwriters after concluding that New York insurance law governed the policy and that, as a matter of law, Advani was barred from recovery because it breached an express warranty in the policy. This appeal ensued.

Although we find that the basis for federal jurisdiction asserted in the complaint is flawed, we nevertheless conclude that the complaint alleges facts sufficient to invoke the court's admiralty jurisdiction. Therefore, pursuant to 28 U.S.C. § 1653 (1994), we grant Advani's request for leave to amend its complaint to assert federal jurisdiction under 28 U.S.C. § 1333 (1994). We further conclude that the district court erred in its choice-of-law analysis, finding instead that English marine insurance law properly governs the policy. Thus, we vacate the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.

## I.

The facts of this case are fairly straightforward. On September 13, 1994, Advani obtained a marine cargo insurance policy underwritten by the Underwriters to cover a shipment of porcelain dishware from the Far East to Port Said, Egypt, via a bonded warehouse in New York. It appears from the record that Advani purchased the policy through its insurance broker, Grifon Insurance Agency, Inc. ("Grifon"), and that Grifon placed the insurance risk at Lloyd's of London through a London broker, Houlder Insurance Services (Marine) Limited. The terms of the insurance policy are evidenced by Cover Note No. M3946215.000.[1]

Three provisions in the Cover Note are relevant here. First, the Cover Note indicates that the policy insures "Porcelain Dishware in cartons in three full container loads door to door." Second, the Cover Note specifies that the shipment is "warranted full container loads Door to Door." And third, the Cover Note incorporates certain Institute Cargo Clauses, which state, *inter alia*, that "[t]his insurance is subject to English law and practice."

On October 24, 1994, cartons of porcelain dishware were loaded into three containers and shipped to Port Said. Upon arrival in Port Said, pursuant to an Egyptian regulation, Egyptian Customs officials opened the containers. At that point, a Customs clearing agent noticed that some of the cartons were dented and that their contents were rattling. Thereafter, the cartons were removed from the containers, loaded onto trucks, and shipped one mile to a warehouse. Later, when Advani surveyed the cartons, it found that their contents had sustained damage in the amount of $150,000. Advani then presented a claim under the policy for that amount. The Underwriters denied coverage on the ground that the removal of the cartons from the containers at Port Said constituted a breach of an express warranty in the policy that required the cartons to be shipped in "full container loads Door to Door."

---

* Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

1. Because there is usually a significant delay between the time when an insurance risk is fully subscribed and when the policy is actually issued, it is customary for a broker placing an insurance risk at Lloyd's of London to furnish the assured with a Cover Note. The Cover Note serves as evidence that the broker charged with placing the insurance risk has actually obtained insurance. The language and terms of the Cover Note mirror the language and terms of the policy. 2 Thomas J. Schoenbaum, *Admiralty And Maritime Law* 404–05 (2d ed.1994) (citation omitted).

Advani responded by initiating the instant action in federal district court, asserting diversity jurisdiction. The Underwriters countered by moving for summary judgment, arguing that the policy is governed by New York insurance law, which bars recovery under a marine cargo insurance policy if the assured breaches an express warranty contained therein. Advani opposed the motion. It argued first that the wording of the warranty was ambiguous, and second, in the alternative, that if it breached the warranty, English law should govern the effect of the breach. In particular, Advani argued that under English law a breach only precludes recovery of those losses causally related to the breach. In order to establish a genuine issue of material fact on the extent to which the porcelain dishware was damaged before it reached Port Said, Advani submitted an affidavit from an Egyptian Customs agent who noticed that the contents of some of the cartons were rattling before the cartons were removed from their containers. Concluding that New York insurance law both governs the policy and precludes recovery, the district granted summary judgment in favor of the Underwriters, and entered judgment accordingly.

## II.

A. Jurisdiction

■ Before we address whether the district court correctly decided the issues before it, we consider *sua sponte* whether the district court had subject-matter jurisdiction to decide the case, focusing on whether the facts contained in the pleadings establish diversity jurisdiction.[2] *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir.1996); *Baer v. United Servs. Auto. Ass'n,* 503 F.2d 393, 397 (2d Cir.1974). Having done so, we find that the district court lacked subject-matter jurisdiction over this case under 28 U.S.C. §'1332

because Advani's pleadings do not demonstrate that the parties are completely diverse. We also find, however, that the pleadings clearly satisfy the requirements of admiralty jurisdiction under 28 U.S.C. § 1333; thus, we grant Advani's request for leave to amend its complaint accordingly.

■ Diversity jurisdiction exists in a civil action between citizens of different states, or between citizens of the United States and citizens or subjects of a foreign state when the matter in controversy exceeds $ 50,000.[3] 28 U.S.C. § 1332(a). The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In other words, federal subject-matter jurisdiction based on diversity is unavailable unless Advani's pleadings demonstrate that it does not share citizenship with any of the defendants-appellees. *John Birch Soc'y v. National Broad. Co.,* 377 F.2d 194, 197 (2d Cir.1967).

Advani attempted to satisfy the requirements of 28 U.S.C. § 1332 by alleging that this action is between a citizen of the United States and citizens or subjects of the United Kingdom. *See Compl.* at ¶¶ 1–3 (describing itself as a United States corporation, Underwriters at Lloyd's as a United Kingdom consortium, and Syndicate 735 as a syndicate at Lloyd's of London operating under the laws of the United Kingdom). In doing so, Advani overlooked the legal status of the defendants-appellees. Both Underwriters at Lloyd's and Syndicate 735 are unincorporated associations. Consequently, for jurisdictional purposes, they do not have legal identities separate from their members. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Thus, courts

2. At oral argument, we raised this issue *sua sponte* and requested the parties to submit supplemental letter briefs on the matter. In its letter brief, Advani conceded that "it cannot be stated conclusively whether diversity of citizenship exists" and requested leave to amend its complaint under 28 U.S.C. § 1653 to assert ad-

miralty jurisdiction. *Appellant's Supplemental Letter Br.* at 3.

3. In 1997, Congress increased the amount-in-controversy requirement to $ 75,000. *Federal Courts Improvement Act of 1996,* Pub.L. No. 104–317, Title II, § 205(a), 110 Stat. 3850.

faced with the task of determining the citizenship of a Lloyd's syndicate have done so in one of two ways. Under the first, and more popular, approach a Lloyd's syndicate is a citizen of every state in which its individual investors, known as "Names," are citizens. *See, e.g., Humm v. Lombard World Trade, Inc.,* 916 F.Supp. 291 (S.D.N.Y.1996); *Chase Manhattan Bank, N.A. v. Aldridge,* 906 F.Supp. 870 (S.D.N.Y.1995); *Lowsley–Williams v. North River Ins. Co.,* 884 F.Supp. 166 (D.N.J.1995); *Transamerica Corp. v. Reliance Ins. Co.,* 884 F.Supp. 133 (D.Del.1995); *Bath Iron Works Corp. v. Certain Member Cos. of Inst. of London Underwriters,* 870 F.Supp. 3 (D.Me.1994). Under the second approach, a Lloyd's syndicate is only a citizen of the state in which its managing/lead underwriter is a citizen. *See Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne,* 26 F.3d 39 (6th Cir.1994).

We do not decide today which approach best determines the citizenship of a Lloyd's syndicate because under either approach the pleadings are lacking; they identify neither the citizenship of the individual investors nor the citizenship of the managing/lead underwriter. Consequently, we cannot discern whether the Underwriters are, in fact, citizens or subjects of the United Kingdom, or any other foreign state for that matter. As a result, the complaint does not establish that this action is between a citizen of the United States and a citizen or subject of a foreign state.

■ Furthermore, the complaint fails to demonstrate that this action is between citizens of different states because it does not identify Advani's citizenship. For jurisdictional purposes, a corporation is deemed to be a citizen both of the state in which it has been incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c). In its complaint, however, Advani, although it describes itself as a corporation, has failed to include either. Instead, it merely pleads that it is a United States corporation with an office in New York. *Compl.* at ¶ 1. Under 28 U.S.C. § 1332(c), this is clearly insufficient. Moreover, as discussed previously, whether we choose to

evaluate the citizenship of Syndicate 735's individual investors or only its lead/managing underwriter, the complaint is still silent on the citizenship of the Underwriters. Consequently, based on the pleadings we cannot find that this is an action between citizens of different states, and jurisdiction under 28 U.S.C. § 1332 is therefore unavailable.

■ Nevertheless, Advani's failure to allege the facts necessary to invoke diversity jurisdiction does not prove fatal to its complaint. In its supplemental letter brief on this issue, Advani asks the court for leave to amend its pleadings to assert admiralty jurisdiction. *Appellant's Supplemental Letter Br.* at 3–4. In doing so, it draws on 28 U.S.C. § 1653 for support, which provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. We have consistently recognized that section 1653 should be construed "liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." *John Birch Soc'y,* 377 F.2d at 198–99. *Accord Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) (citation omitted); *Cox v. Livingston,* 407 F.2d 392, 393 (2d Cir. 1969). However, section 1653, even liberally construed, does not allow a plaintiff to amend its complaint to substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not. *See Pressroom Unions–Printers,* 700 F.2d at 893 (holding that section 1653 does not allow a plaintiff without statutory standing to amend its complaint to add a party with standing).

■ Here, admiralty jurisdiction is apparent from the face of the complaint. From the outset, Advani has repeatedly indicated that it is seeking to recover under a marine cargo insurance contract. *Compl.* ¶¶ 5, 11, 15. It is well established that cases involving marine cargo insurance policies fall within the federal court's admiralty jurisdiction, especially when, as here, the policy's provisions exclusively relate to maritime commerce. *See* 28 U.S.C. § 1333; *New England Mut. Marine Ins. Co. v. Dunham,* 78 U.S. (11 Wall) 1, 20 L.Ed. 90 (1870); *Sirius Ins. Co.*

*(UK) v. Collins,* 16 F.3d 34, 36 (2d Cir.1994); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 199 (2d Cir.1992). Hence, we allow the amendment even though it asserts a new theory of subject-matter jurisdiction because both the pleadings and judicial economy support it. *See In re Balfour MacLaine Int'l Ltd.,* 85 F.3d 68, 76 (2d Cir.1996) (exercising subject-matter jurisdiction based on unpleaded theory after finding that the original theory was insufficient); *Curley v. Brignoli, Curley & Roberts Assocs.,* 915 F.2d 81, 84–85 (2d Cir.1990) ("This court must liberally construe plaintiffs' complaint 'to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded.'") (quoting *New York State Waterways Ass'n v. Diamond,* 469 F.2d 419, 421 (2d Cir.1972)).

### B. Choice–of–Law

We now turn our attention to the central issue on appeal: whether New York or English insurance law should govern the policy. Applying a "grouping of contacts" choice-of-law analysis, the district court determined that New York law properly governs the policy because (1) Advani maintains a place of business in New York; (2) Advani obtained the policy through a New York broker; and (3) Advani received the Cover Note in New York. *Advani Enters. v. Underwriters at Lloyds,* 962 F.Supp. 415, 419 (S.D.N.Y. 1997). We review the district court's findings of law *de novo,* and its factual conclusions under a clearly erroneous standard. *Ciaramella v. Reader's Digest Ass'n,* 131 F.3d 320, 322 (2d Cir.1997). Because we find that the district court's analysis overlooked several critical points of contact between the policy and England and that English law governs the issue of liability in this case, we vacate and remand for further proceedings.

■ This policy is a maritime contract. Therefore, general federal maritime law, including federal choice-of-law rules apply. *Sundance Cruises Corp. v. American Bureau of Shipping,* 7 F.3d 1077, 1080 (2d Cir.1993). Federal maritime law requires us to determine "the scope and validity of the [marine insurance] policy provisions [ ] involved and the consequences of breaching

them" by using state law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 316, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955). Under federal choice-of-law rules, we determine which state law to use by "ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved." *Lauritzen v. Larsen,* 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953); *accord Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Sundance Cruises,* 7 F.3d at 1081–82; *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 416–17 (2d Cir.1990). More concretely, this choice-of-law analysis should include an assessment of the following contacts: (1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See e.g., Sundance Cruises,* 7 F.3d at 1082; *State Trading,* 921 F.2d at 417; *Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189, 193–95 (2d Cir.1955). *See also Aqua–Marine Constrs., Inc. v. Banks,* 110 F.3d 663, 674 (9th Cir.) *cert. denied,* —— U.S. ——, 118 S.Ct. 339, 139 L.Ed.2d 263 (1997); *Milanovich v. Costa Crociere, S.p.A.,* 954 F.2d 763, 767 (D.C.Cir.1992).

■ Applying these factors, we conclude that English law properly governs the policy. The policy expressly provides that "[t]his insurance is subject to English law and practice." Although this contact alone is not dispositive, we give it considerable weight in this case for two reasons. First, Advani, the party seeking to enforce the choice-of-law provision, did not draft the policy. The Underwriters did. Second, the Underwriters relied on English marine insurance law when they originally denied coverage. *See Letter from Waltons & Morse to Lilly Sullivan Barkan & Junge P.C. of Apr. 2, 1995* at 1 ("Circumstances where a breach of warranty is excused are provided for at Section 34(1) of the Marine Insurance Act 1906....").

Moreover, Advani obtained the policy by participating in the underwriting market at Lloyd's of London in England. Advani addressed a letter requesting payment under the policy to Lloyd's Underwriters c/o Houlder Insurance Services (Marine) Limited in England, *Letter from Lilly Sullivan Barkan & Junge P.C. to Lloyds Underwriters c/o Houlder Ins. Servs. (Marine) Ltd of Mar. 21, 1995* at 1, and the response came from English solicitors. *Letter from Waltons & Morse.* Furthermore, although the record does not contain enough information to definitively establish the citizenship of the Underwriters, it reveals that they are authorized to underwrite marine cargo insurance policies in the United States Kingdom and that they have a place of business in England.

On the other hand, we find the connections with New York to be considerably less compelling. They include the delivery of the Cover Note to Advani in New York; the loading of cargo for shipment from a bonded warehouse in New York; and an office that Advani maintains New York. With respect to the Cover Note, its importance is undercut because the record does not indicate who delivered it to Advani in New York. For instance, had the record established that the Underwriters or their agent delivered it, the argument in favor of the application of New York law would have been stronger. Similarly, Advani's office in New York, albeit important, carries less weight because the record does not show that Advani's principal place of business or state of incorporation is New York. Assessed in this light, and when compared to the contacts with England, the contacts with New York are fewer and less important. Hence, we conclude that English law should govern the policy.

### III.

For the foregoing reasons, we allow the plaintiff to amend its complaint to assert admiralty jurisdiction instead of diversity jurisdiction. Having confirmed that subject-matter jurisdiction over this case exists, we conclude that English marine insurance law should govern the interpretation of the policy. Thus, the summary judgment order of the district court is vacated, and the case is remanded for further proceedings to determine whether under English law Advani is entitled to recover on its claim.