James R. ELLIS, Plaintiff,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, and Provident Life & Casualty Insurance Company, Defendants.

No. 96 Civ. 2484 (MP).

United States District Court, S.D. New York,

June 24, 1996.

See also, 926 F.Supp. 417.

Liddle Robinson & Shoemaker by W. Dan Boone, Marc A. Susswein, New York City, for James R. Ellis.

Paul Hastings, Janofsky & Walker by Patrick W. Shea, Ann T. Kenny, New York City, for defendants.

### OPINION

MILTON POLLACK, Senior District Judge:

This is a motion by plaintiff to remand an action, initiated in the Supreme Court, New York County, and removed to this court by the defendants on the ground of diversity of citizenship.[1] Plaintiff claims that defendant Provident Life & Casualty ("Casualty") has its "principal place of business" in New York within the meaning of 28 U.S.C. § 1332, that it is therefore a citizen of New York, and that consequently there is no diversity, since plaintiff is also a New York citizen.

The removal statute, 28 U.S.C. § 1441, permits removal of state court actions based on state law "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Citizenship of a corporation is determined by the diversity statute, 28 U.S.C. § 1332:

a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .

Under 28 U.S.C. § 1332, defendants Provident Life & Accident ("Accident") and Casualty are both citizens of Tennessee by virtue of their incorporation in that state. Plaintiff alleges that since Casualty derives most of its revenues from applications originating in New York, it may also be considered a citizen of New York under the principal place of business test. Defendant responds that Casualty's principal place of business is in Chattanooga, Tennessee since virtually all of the operating functions of the company are performed from its Home Office in that city.

Casualty was formed in order to permit Accident to sell insurance in New York without subjecting Accident's other operations to New York insurance regulation. Casualty established sales offices in New York and New Jersey to obtain applications for Casualty's policies of insurance from independent brokers. The sales organization as a practical matter, in the majority of cases, does not have any direct contact with the applicants for or purchasers of policies. Instead, applicants and policyholders deal directly, in the majority of transactions, with their own brokers or with the Casualty Home Office after it has received and accepted the applications.

---

1. The suit alleges (i) breach of contract; (ii) promissory estoppel; (iii) negligent misrepresentation; (iv) constructive trust; (v) unjust enrichment; (vi) violation of the New York State age discrimination statute; and (vii) violation of the New York City age discrimination statute.

When a broker presents an application to a sales office in New York for a client of his, the application is forwarded by the local sales office to underwriters in Chattanooga who review that application to determine whether to issue a Casualty policy. The decision to issue a policy comes from Chattanooga, the policy bears the company's Chattanooga address, and premiums are paid by the insured directly to the Home Office in Chattanooga. The New York sales offices do not exercise any discretion nor do they accept the application. Questions about coverage, changes in coverage thereafter, and policy terminations are all matters for the Chattanooga office. Policyholders are directed in the policy to submit claims to the Chattanooga office, which is designated in the policy as Casualty's Home Office. Home Office employees schedule required independent medical examinations on Casualty's policies, and direct the activities of outside vendors in the investigation of claims on the policies. Personnel at the Home Office review the claims on the policies and make a determination concerning their payment.[2]

All regulatory, legal, financial and accounting functions relating to Casualty are performed at the Home Office. All policies are designed and constructed by Home Office employees. Casualty maintains its principal bank accounts in Chattanooga, Tennessee. This emphasis on Tennessee is reflected by the fact that the corporate activity attributable in 1995 to Casualty's business resulted in $6.5 million in operating expenses in Chattanooga for Casualty operations, whereas only $3.9 million was incurred by Casualty for New York activities.

Casualty's Board of Directors meets in Tennessee, its tax returns are filed there and those returns, like Casualty's other state and federal filings, list Chattanooga, Tennessee as the company's principal place of business.

The only substantial activity *not* carried out at the Home Office is the actual obtaining and forwarding to the Home Office of an application from the independent brokers for the insurance policy itself. The independent brokers are not company employees. The role of Casualty's sales personnel is principally to recruit and service these independent brokers in respect to applications for insurance; they *do not deal directly* with the applicants for policies, the ultimate policyholders, or the general public. Branch sales offices are computer-connected with the Home Office and carry forward the issuance of Home Office-authorized insurance, including printing the terms of policies where required and relaying the payment of claims, as instructed by the Home Office.

■ On a motion to remand, the removing party has the burden to "establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers Inc.*, 612 F.2d 651, 655 (2d Cir.1979) (citation omitted). In this case, the removing party has submitted to the Court affidavits including depositions, historical materials, samples of company stationary, and an insurance policy issued by Casualty. The Court also had at its disposal trial testimony in previous litigation between the parties herein and affidavits and depositions submitted by the party seeking a remand. An evidentiary hearing for further dispositive matter concerning this motion is unnecessary under these circumstances, particularly since the parties' submissions hereon reveal no factual disputes, and simply present issues of law. *See Sassower v. Sheriff of Westchester County*, 824 F.2d 184, 190 (2d Cir.1987); *U.S. v. Caming*, 756 F.Supp. 121, 125 n. 2 (S.D.N.Y.1991), *aff'd* 968 F.2d 232 (2d Cir.1992).

■ In determining a corporation's principal place of business, courts in this circuit employ either a "nerve center" or "public impact" test. *R.G. Barry Corp.*, 612 F.2d at 654. The nerve center approach designates as a corporation's principal place of business the area "from which it radiates out to its constituent parts and from which

---

2. These facts were acknowledged by plaintiff Ellis at the trial of his federal and state age discrimination claims against these defendants: "[The Home Office] did the financial and medical underwriting of the policies, issued the policies, collected the premiums on the policies, paid the commission that were due to the brokers after the first renewal, and also handled the financial accounting for the branch office." Tr. at 10, 11 (*Ellis v. Provident Life and Accident Insurance Co. and Provident Life and Casualty Insurance Co.*, 926 F.Supp. 417 (S.D.N.Y.1996)).

its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959). The "public impact" test designates as the principal place of business "the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public." *R.G. Barry Corp.*, 612 F.2d at 654.

Courts typically utilize the nerve center approach when corporate operations are spread across numerous states and the public impact test when corporate operations are more centralized. *Id.* In this case, the Court need not select which test is more appropriate because, under both tests, Casualty's principal place of business is in Tennessee. The geographical location of the substantial corporate activity for Casualty's business is in Chattanooga; that is, the location of its corporate operations. Diversity of citizenship, to be consonant with business reality, places Casualty's principal place of business in Tennessee.[3]

The main argument plaintiff employs to indicate that Casualty's principal place of business is in New York is that Casualty derives approximately 83% of its premium revenues from policies covering the New York clients.[4] This figure expresses applications which are processed and accepted in Chattanooga and collected on by the Home Office, to which premiums are transmitted by the policy holders. Moreover, the fact that most of a company's sales originate through applications in one state does not make that state the company's principal place of business if the company's other primary func-

tions, as herein, largely are based in another state. *See Atkinson v. B.C.C. Associates, Inc.*, 1992 WL 51568, at *3 (S.D.N.Y.1992) (principal place of business of company that derived most of its revenue in New York was in Connecticut because the company's staff was based in Connecticut and its employees had little contact with New York residents).

Plaintiff relies on *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490, 496 (S.D.N.Y.1963) and *R.G. Barry Corp.* in support of his "percentage of revenue" argument. Defendants respond correctly that these cases involve corporations that simply sold products such as tires and clothing in the locality involved and did not engage in the functions performed at the Home Office, as in this case, for example, investment of insurance premiums, claims administration, and underwriting, that constituted the significant and major components of Casualty's operations.

Casualty's "nerve center" is clearly in Chattanooga, since virtually all of its policy-making and substantive decisions are made at and by its Home Office.

Similarly, under the public impact approach, although Casualty interacts with New York residents through an initial approach to their broker representatives independent of Casualty, the more significant interaction takes place through personnel in Chattanooga, rather than New York. Given (i) the broad operating functions of the Home Office; (ii) the lack of contact between applicants and policyholders and Casualty's employees in New York branch and district offices; (iii) the designation on the stationary and correspondence and in the disability poli-

---

3. Furthermore, given the significant control that Accident exercises over Casualty's operations, the application of these tests may be unnecessary in determining Casualty's principal place of business. In situations where a subsidiary corporation is not really a separate entity, the subsidiary may take the citizenship of its parent for purposes of diversity jurisdiction. *See In re Air Disaster Near Cove Neck, N.Y. on Jan. 25, 1990*, 774 F.Supp. 718, 720 (E.D.N.Y.1991). In a case in which a corporation selling insurance employed a sales structure similar to the one in this case, the Fifth Circuit held that:

   [I]t is apparent that the corporate and business activities of each of the defendants, except the

solicitation of memberships, are centered in the offices of National of Atlanta. These business activities are managed, directed and completely controlled by National under the administration of its officers. The defendants are not separate corporate entities but integrated subsidiaries of National.

*Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456, 459 (5th Cir.1965).

4. The remaining 17% of premiums is derived from policyholders who originally purchased coverage while residents of New York and later moved elsewhere and from corporations located in New York who obtained coverage for employees in other states.

cy of Casualty's Chattanooga address as the Company's Home Office; and (iv) the instruction in the disability policy that claims are to be sent to the Chattanooga office, Casualty's New York policyholders are on notice that they are dealing with an out-of-state corporation at its principal place of business. Diversity jurisdiction under these circumstances serves the purposes of the diversity statute:

> Since the underlying reason for diversity jurisdiction is to protect out-of-state litigants from assumed local prejudices, Congress could perceive no reason to open the federal forum to an essentially local enterprise.

*R.G. Barry*, 612 F.2d at 654.

New York policyholders are on notice and necessarily must perceive from the foregoing that Casualty is based in and functions principally in Tennessee. Plaintiff held a similar perception of his employer as a corporation with its principal place of business outside of New York State. In a prior case involving these same parties, plaintiff himself pleaded in his complaint that Casualty's principal place of business was in Chattanooga; he averred:

> Upon information and belief, Defendant Provident Life & Casualty ... is a Tennessee corporation with its principal place of business located at One Fountain Square, Chattanooga, Tennessee and is a wholly-owned subsidiary of Provident Life and Accident.

Complaint at ¶ 3 (*Ellis v. Provident Life and Accident Insurance Co. and Provident Life and Casualty Insurance Co.*, 93 Civ. 2524). After this complaint was withdrawn for reasons unrelated to any diversity question, plaintiff brought another suit against these defendants based on alleged federal and state age employment discrimination. *See Ellis v. Provident Life & Accident Insur. Co.*, 1995 WL 453333 (S.D.N.Y.1995). In ruling on a summary judgment motion in that suit, Judge Keenan of this Court adopted the plaintiff's own views on Casualty's principal place of business. His opinion stated:

> Defendants Provident Life & Accident Insurance Company ... and Provident Life & Casualty Company ... are private corporations that have their principal place of business at One Fountain Square, Chattanooga, Tennessee, 37402.

*Id.* 1995 WL 453333 at *1.

The obvious control the Home Office exercises over corporate and substantive functions and decisionmaking is sufficient to establish to the public and to applicants for insurance that the company's principal place of business is in Chattanooga, Tennessee.

The motion to remand is denied.

SO ORDERED.