ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, American Home Assurance Company, Employers Insurance of Wausau, Continental Insurance Company and West Coast Marine Managers, Inc., Plaintiffs,

v.

TRUCK INSURANCE EXCHANGE and Farmers Insurance Group, Defendants.

No. 94–CV–2587(JS).

United States District Court, E.D. New York.

Aug. 25, 1997.

Robert J. Giuffra, Dougherty, Ryan, Giuffra & Zambito, New York, NY, for Plaintiffs.

Timothy J. Abeel, Kevin G. O'Donovan, Palmer Biezup & Henderson, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Plaintiffs Arkwright–Boston Manufacturers Mutual Insurance Company, American Home Assurance Company, Employers Insurance of Wausau, Continental Insurance Company and West Coast Marine Managers, Inc. (the "Excess Carriers") instituted this action on November 3, 1993 in Supreme Court, Queens County, claiming that the defendants, Truck Insurance Exchange and Farmers Insurance Group (the "Primary Carriers"), failed to settle an underlying personal injury lawsuit in good faith. The defendants then removed the case to federal court on May 25, 1994 on the basis of diversity of citizenship among the real parties in interest. The instant action was tried before a jury, which rendered a verdict on May 8, 1997 in favor of defendants. Pending before the Court is plaintiffs' motion to vacate the judgment and remand the action to state court for lack of subject matter jurisdiction.

### BACKGROUND

The plaintiffs instituted this action in Supreme Court, Queens County in 1993, claiming that the defendant Primary Carriers breached their duty to negotiate a settlement of the underlying lawsuit within the primary policy limits. The claims in this action arose out of an underlying personal injury lawsuit which occurred in 1990 (the "Tobar action"). In the Tobar action, the plaintiffs therein were awarded over $20 million in damages as a result of a vehicle accident between the Tobars' car and a truck owned by American President Lines ("APL"). After the jury verdict, the award was ultimately reduced to $7 million, $5 million contributed by the Excess Carriers, $1 million contributed by the co-defendant in the Tobar action, and the other $1 million from the Primary Carriers. In the complaint, the plaintiffs seek only the $5 million they paid to the Tobars, along with legal fees, disbursements and costs from both the instant action and the Tobar action.

APL carried a primary insurance policy from defendant Truck with a policy limit of $1 million. APL also carried an excess coverage policy in the amount of $25 million from a pool of excess carriers, including plaintiffs Arkwright–Boston Manufacturers Mutual Insurance Company (providing 44% of the excess coverage), American Home Assurance Company (providing 20% of the excess coverage), Employers Insurance of Wausau (providing 8% of the coverage) and Continental Insurance Company (providing 20% of the excess coverage). Plaintiff West Coast Marine Managers, Inc. ("West Coast Marine") was also a signatory on the excess policy, as managing agent for certain other excess carriers who provided the remaining 8% of the $25 million excess coverage. West Coast Marine, as attorney-in-fact, subscribed to the excess policy on behalf of the following insurers: (1) Republic Insurance Company; (2) Midland Insurance Company; (3) Reinsurance Corp. of New York; (4) Pennsylvania Lumbermen's Mutual Insurance Company; (5) Ranger Insurance Company; (6) Lumbermen's Mutual Insurance Company; and (7) Northeastern Insurance Company. West Coast Marine subscribed to the percentage of the excess policy solely as manager for these other insurance companies and not on its own behalf, and did not share the risk of loss. Deans Dep. at 14. Brian Deans, President of West Coast Marine, also testified at his deposition that in settlement of the Tobar action, West Coast Marine was reimbursed for every dollar from the insur-

ance companies it represented in signing the excess policy. Deans Dep. at 14, 69.

As mentioned above, on May 25, 1994, the defendants removed this action to federal court, claiming a diversity of citizenship among the real parties in interest to this action. In their notice of removal, the defendants provided the following list of citizenship for the real parties in interest, based on the state of incorporation and the state of the principal place of business ("PPB"):

Arkwright-Boston Manufacturers Mutual Insurance Company

Incorporation: Massachusetts

PPB: Massachusetts

American Home Assurance Company

Incorporation: New York

PPB: New York

Employers Insurance of Wausau:

Incorporation: Wisconsin

PPB: Wisconsin

Continental Insurance Company

Incorporation: New Hampshire

PPB: New York

Republic Insurance Company:

Incorporation: Texas

PPB: Texas

Midland Insurance Company:

Incorporation: New York

PPB: New York

Reinsurance Corporation of New York

Incorporation: New York

PPB: New York

Pennsylvania Lumbermen's Mutual Insurance Company

Incorporation: Pennsylvania

PPB: Pennsylvania

Ranger Insurance Company

Incorporation: Texas

PPB: Texas

Lumbermen's Mutual Insurance Company

Incorporation: Massachusetts

PPB: Ohio

Northeastern Insurance Company:

Incorporation: Connecticut

PPB: Iowa

Truck Insurance Exchange:

Incorporation: California

PPB: California

In the notice of removal, therefore, the defendants did not list West Coast Marine as a real party to the controversy, and instead listed all those insurance companies that provided excess coverage to APL.[1] In a conference before Magistrate Caden in 1994, the parties discussed the court's subject matter jurisdiction and defendants' position that West Coast Marine was not the real party in interest, but plaintiffs for some inexplicable reason chose not to move to remand the action. Giuffra Reply Aff. ¶ 2. Indeed, plaintiffs concede that they did not revisit the issue of the court's subject matter jurisdiction until after the jury verdict in defendants' favor on May 8, 1997.

## DISCUSSION

### A. General Considerations of Diversity Jurisdiction and Removal

Under the federal removal statute, 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Such actions, other than federal question cases, are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b). As neither of the defendants are citizens of New York, the relevant question is whether this court, lacking a federal question, has original jurisdiction arising from diversity of citizenship among the parties.

 Under 28 U.S.C. § 1332, the district courts have original jurisdiction of all civil actions where the matter in controversy

---

**1.** West Coast Marine changed its name to Somerset Insurance Services of California in 1990, prior to the institution of this action. Giuffra Reply Aff. ¶ 4. Both West Coast Marine and Somerset are California corporations. *Id.*

exceeds $75,000 [2] and is between "citizens of different States." For purposes of this section, a corporation is deemed to be a citizen of both the state of incorporation and the state where it has its principal place of business. *Id.* § 1332(c)(1). Jurisdiction cannot be waived, *United States v. Griffin,* 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764 (1938), and a plaintiff can challenge jurisdiction at any time during the litigation, including after trial. *Woodward v. D.H. Overmyer Co.,* 428 F.2d 880 (2d Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971); *United States v. Heyward–Robinson Co.,* 430 F.2d 1077 (2d Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). The court itself has an obligation to raise the issue of removal jurisdiction sua sponte if it appears that diversity is lacking. *Mignogna v. Sair Aviation,* 937 F.2d 37 (2d Cir.1991).

■ A removing party must establish by "competent proof" that the court has subject matter jurisdiction over the action. *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979); *Ellis v. Provident Life & Accident Ins. Co.,* 929 F.Supp. 751 (S.D.N.Y.1996). In this regard, where a motion to remand has been filed, the burden of persuasion remains upon the removing party, and any substantial doubts as to the propriety of removal must be resolved against the proponent of the federal forum. *Nicola Products Corp. v. Showart Kitchens, Inc.,* 682 F.Supp. 171 (E.D.N.Y.1988).

### B. *The Real Parties In Interest*

■ Diversity jurisdiction does not exist unless each defendant is a citizen of a different state from each plaintiff. *Bumberger v. Insur. Co. of No. America,* 952 F.2d 764 (3d Cir.1991) (citing *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978)); *see also Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In this action, the plaintiffs complain that because plaintiff West Coast Marine Managers is a

California resident and both defendants are California residents, diversity of citizenship is lacking and the case must be remanded to state court. Plaintiffs rely on the Supreme Court's recent decision in *Caterpillar, Inc. v. Lewis,* — U.S. ——, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), which held that the district court's failure to remand an improperly removed action is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered. *Id.* at ——, 117 S.Ct. at 471. Conversely, they argue, when a defect in jurisdiction as exists in this case has not been cured during the course of the litigation, the case must be remanded.

■ Plaintiffs' reliance on *Caterpillar,* however, is misplaced. The issue before the Court is not whether a jurisdictional defect in the removal has been cured, but rather whether the notice of removal correctly identified the real parties to the controversy. As noted above, defendants' notice of removal named each of the actual insurance companies who provided the excess coverage as the real parties to the controversy, rather than West Coast Marine, which subscribed to the excess policy on behalf of these companies. The ultimate issue, therefore, is whether West Coast Marine, as the non-diverse party, is merely a nominal or formal party or whether it has a real and substantial interest in the outcome of the litigation.

■ It is settled law that diversity jurisdiction cannot be created simply by naming a nominal diverse party as plaintiff if that person does not actually possess the right being sued upon. 14 Wright & Miller, § 3637, at 92 (1985). As such, in determining whether complete diversity exists, a federal court must disregard nominal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *Navarro Savs. Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980). In *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), the Supreme Court addressed the issue of when a

---

**2.** At the time this action was removed in 1994, the jurisdictional amount was only $50,000. Section 1332 was amended as of January 17, 1997 to increase the jurisdictional amount to

$75,000 for diversity cases pursuant to the Federal Courts Improvement Act of 1996, § 205, Pub.L. No. 104–317, 110 Stat. 3047, 3050 (1996).

party is merely a nominal party and can be disregarded in determining diversity of citizenship. Specifically, in *Navarro*, the Court confronted the issue of whether the trustee of a business trust, given exclusive power and control to invest the trust and defend the trust funds, was the real party to the controversy rather than the beneficiaries of the trust. The Court concluded that the customary powers of trustees to hold, manage and dispose of assets for the benefit of others made their interest in the litigation real and substantial. 446 U.S. at 465, 100 S.Ct. at 1784 (citing *Bullard v. Cisco*, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933)).

Unlike the trustee/beneficiary relationship, the principal/agent relationship has different legal requirements and liabilities. Indeed, the Second Circuit recently addressed whether an agent who signs a contract on behalf of a principal and who has the power to institute lawsuits on the principal's behalf is the real party in interest for purposes of diversity jurisdiction. In *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir.1995), Airline Reporting Corporation ("ARC") brought a diversity action in federal court in its capacity as a representative of numerous air carriers, seeking to collect from the defendant travel agent money owed from the purchase of airline tickets. ARC was a Delaware not-for-profit corporation with a principal place of business in Virginia and had been created as a clearinghouse to collect on debts for air travel.[3]

The Second Circuit in *ARC* held that where a party sues or is sued in a representative capacity, its legal status is regarded as distinct from its position when it operates in an individual capacity. 58 F.3d at 862. Thus, a party's corporate citizenship is not controlling when it acts merely as an agent representing interests of others and in such cases, the citizenship of the represented individuals controls for diversity purposes as they are the real and substantial parties to the dispute. *Id.*

■ Importantly, the Second Circuit also distinguished the real party to the controversy required for diversity and the real party in interest analysis of Rule 17(a). Although ARC was a "real party in interest" in the sense that the action properly could be maintained in ARC's name as the party to the contract,[4] the Second Circuit ruled that ARC must still establish that it is the real party in interest for the purpose of determining diversity of citizenship. *Id.* at 862 n. 4 (citing *Wilsey v. Eddingfield*, 780 F.2d 614 (7th Cir.1985), *cert. denied*, 475 U.S. 1130, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986); *Rock Drilling, Etc. v. Mason & Hanger Co.*, 217 F.2d 687 (2d Cir.1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955)). The court then analyzed whether ARC had a real and substantial interest in the outcome of the lawsuit and noted that in initiating the action, ARC did not seek to protect any corporate interests of its own. Rather, ARC simply sought to fulfill its obligations under the management agreements with the airlines as both collection agent and attorney-in-fact. 58 F.3d at 862. Moreover, ARC did not allege that it suffered any corporate damage or pecuniary loss itself, nor did ARC lay claim to any portion of the potential recovery obtained in the lawsuit, and contended that it was obligated under its management agreement to remit any damages it collected in the action to the carriers it represented. *Id.* Thus, the Second Circuit concluded that ARC was "a mere conduit for a remedy owing to others, advancing no specific interests of its own" and that the "real and sub-

---

**3.** Travel agents would also remit payments to ARC for air travel and ARC would forward the proceeds to the appropriate carrier. The airlines themselves entered into carrier services agreements with ARC, by which ARC would have a power of attorney to enter into contracts with travel agents and to institute legal proceedings against any agent to collect funds owed to the carriers. The travel agencies then entered into agreements with ARC, agreeing to conduct business with the airlines solely through ARC and in the specific manner outlined by ARC.

**4.** Under New York law, a promisee for the benefit of third parties may enforce the promise on behalf of the third parties. *Berger v. Heckler*, 771 F.2d 1556, 1564 (2d Cir.1985), and is consistent with Fed.R.Civ.P. 17(a), which provides that a real party in interest includes those parties with whom a contract has been made for the benefit of another.

stantial parties" were the air carriers, whose citizenship would be controlling for purposes of determining diversity of citizenship. *Id.*

A similar analysis appears in the Southern District's decision in *Humm v. Lombard World Trade Inc.*, 916 F.Supp. 291 (S.D.N.Y. 1996). In *Humm*, the plaintiff was a lead underwriter for a Lloyd's syndicate of inactive underwriters referred to as "Names." Humm brought the action on behalf of himself and other policy underwriters to recover money loaned to the defendant insured. The court first explored the structure of Lloyd's of London, in which each Name subscribes to a small fraction of the insurance risk and the active underwriter, who must also be a Name, is appointed to manage the affairs, subscribe to policies and to settle and defend any insurance actions. The court found that the actual Names in the Lloyd's syndicates, rather than the active or leading underwriter, were the "real parties in interest," and thus, citizenship of the Names had to be examined in determining whether there was complete diversity between the plaintiffs and the defendants for purposes of diversity jurisdiction.

In reaching its holding, the court in *Humm* first looked to New York agency law, which provides that if the party making a contract with an agent is on notice that the agent is acting for a principal, then the principal is "partially disclosed" and the agent is not liable. *Humm*, 916 F.Supp. at 295 (citations omitted). Under agency principles, therefore, the court looked to the parties that would ultimately bear the financial risk of the loss, which were the inactive syndicate underwriters who actually provided the insurance coverage. *Id.* at 297–298. The court also noted that these insurance syndicates bore no resemblance to the business trusts addressed in *Navarro* because unlike trust beneficiaries, the inactive underwriters are investors who face the liability for the shares of the syndicates. *Id.* at 298. Each inactive underwriter was responsible for its propor-

tional share of the specific insurance in question and thus, *Navarro* is inapplicable. *Id.* The court also noted that this result is consistent with the Supreme Court's decision in *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), in which the Supreme Court rejected a real party in interest approach which looks to control over the conduct of the business and the ability to initiate or control the course of litigation.

The Court finds that the Second Circuit's decision in *ARC* and the court's analysis in *Humm* support the conclusion that it is the underlying insurance carriers, and not West Coast Marine, that are the real parties to this controversy. First, it is undisputed that the ultimate financial risk of loss from the Tobar action was borne by the underlying insurance companies and not West Coast Marine and that any award in this action would be remitted to the insurance companies. Second, it is also undisputed that West Coast Marine's role in this bad faith action is that of an attorney-in-fact and managing agent for those insurers. Moreover, as *ARC* makes clear, simply because the managing agent has the power to settle and defend lawsuits on behalf of the principals, to manage the affairs and income and expenditures and to execute contracts and policies on behalf of the principal does not mean that the agent has a real and substantial interest in the outcome of the litigation.

In reaching this conclusion, the Court rejects the plaintiffs' argument that West Coast Marine has a real and substantial interest in this litigation because part of its compensation is derived from the profitability of the insurers. In this regard, the plaintiffs also argue that Fremont Indemnity, West Coast Marine's reinsurer is also a real party to the controversy because Fremont had to pay claims to West Coast Marine as a result of the Tobar settlement. Fremont is also a California corporation that would destroy diversity of citizenship.[5] If plaintiffs'

---

5. The defendants argue that each of these additional arguments should be rejected because they are based on a supplemental affidavit of Brian Deans, President of West Coast Marine, which contradicts his earlier deposition testimony that West Coast Marine had no direct stake in the outcome of this litigation and that any award on its part would be remitted to the underlying insurers. The Court need not address this argu-

argument was accepted, however, virtually every individual who has a stake in the profitability of the underlying insurance companies would have standing to institute a bad faith action against the primary carriers. Such derivative injury on the part of West Coast Marine, which is not even a claim in this lawsuit, would extend the meaning of "real and substantial interest" beyond logical and manageable bounds. West Coast Marine's ability to participate in this action is based solely on its position as the managing agent for the insurance companies it represents, and is empowered to do so exclusively through the mechanism of the management agreement. According to the Second Circuit, in these circumstances, its citizenship may be disregarded and the focus of the inquiry into diversity must remain on the actual parties that have a direct stake in the outcome of this lawsuit.[6]

The Court holds, therefore, that the real parties to this controversy are the named insurance companies in defendants' notice of removal and that West Coast Marine is a nominal or formal party whose citizenship can be disregarded for purposes of determining diversity of citizenship. In addition, as each of these insurance companies, along with the other named plaintiff carriers are diverse from the defendants, subject matter jurisdiction based on diversity of citizenship exists in this action and the case need not be remanded to state court.

### C. Judicial Estoppel

Defendants also argue that West Coast Marine should not be able to change its legal position from its stance in *Marine Terminals Corp. v. St. Paul Fire & Marine Insur. Co.*, No. 89–4557, 1990 WL 174478, at * 1 (N.D.Cal. April 25, 1990), in which West Coast Marine argued that its citizenship should be ignored as nominal in favor of the real parties to the controversy, which were the insurance companies it managed.

In *Marine Terminals*, creditors of an insured corporation sued St. Paul Fire and West Coast Marine in California state court for a declaratory judgment that the policy executed by St. Paul and West Coast Marine covered certain business debts incurred by the insured. West Coast Marine and St. Paul then removed the action to federal court on the basis of federal question and diversity of citizenship. The creditors then moved to remand the action to state court.

The court explored West Coast Marine's management agreement with the group of insurers it managed, identical to those in the instant action. The management agreement, also identical to the one in the current action, provided that West Coast Marine could accept and bind proposals for insurance policies and underwrite such business and issue policies. As manager, West Coast Marine was also to establish a bank account as a fiduciary into which all premiums would be deposited and from which all drafts in payments of losses and expenses and the managers' compensations would be drawn. The management agreement also provided that West Coast Marine could cancel or terminate, revise or endorse such policies and that the manager had the authority and responsibility to handle claims and losses. All losses and expenses, however, were to be ultimately paid by the insurance companies. As in this action as well, West Coast Marine was compensated through a percentage of gross earned premiums and contingent commissions.

In seeking remand, the creditors in *Marine Terminals* argued that West Coast Marine was a necessary party because it participated in the profits and losses of the companies it represented and was a party to the insurance contract. The court then analyzed whether joinder of West Coast Marine was fraudulent or a sham and concluded that it was not. 1990 WL 174478, at * 3. Fraudulent joinder exists if the plaintiff fails to state a cause of action against a resident

---

ment because it finds the plaintiffs' arguments to be without merit.

**6.** Plaintiffs also argue that West Coast Marine has a substantial interest in the outcome of this action because it has exposure under its management agreement and would be exposed to liabili-

ty for breach of its fiduciary duties to the underlying insurers. The rights and liabilities of West Coast Marine as the manager for the pool of insurers, however, have nothing to do with the recovery sought in this action.

defendant, and the failure is obvious according to the settled rules of the state. *Id.* The court then analyzed whether under California law, a pool manager was considered an insurer and would be subject to suit for declaratory judgment. The question in fraudulent joinder, however, is whether plaintiffs can possibly state any claim under state law against the named defendant. *Id.* The creditors then claimed that for purposes of their declaratory judgment action to determine coverage, they had to sue West Coast Marine because it could affect the terms of the policy, could pay or reject claims, derives its compensation from the underwriting profits and has the power to defend the action. The court concluded that the joinder of West Coast Marine was not unreasonable given the breadth of its responsibilities under the management contract and thus there was no fraudulent joinder as a party defendant. *Id.* at * 4. The court also noted that it would reach the same result under a real party in interest analysis because the insurance companies represented by West Coast Marine were not diverse from the plaintiff creditors. *Id.* at * 5.

■■■ Although not phrased as such, defendants are arguing that West Coast Marine should be judicially estopped from taking a legal position contrary to a position taken in a prior action. Under this doctrine, an opposing party may prevent a party who benefits from the assertion of a certain position from subsequently adopting a contrary position. *Young v. United States Department of Justice,* 882 F.2d 633, 639 (2d Cir. 1989). The doctrine of judicial estoppel, however, only applies if the party against whom estoppel is sought actually obtained a judgment as a result of the inconsistent opinion. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis,* 903 F.2d 109, 114 (2d Cir.1990) (citation omitted). As West Coast Marine lost this argument in *Marine Terminals,* it could hardly have benefitted from the legal position in the prior determination. Accordingly, judicial estoppel does not apply.

Nevertheless, the court concludes that the California district court's decision in *Marine Terminals* is inapposite to the case at bar. First, that case involved the fraudulent joinder of a party, which necessitated an examination of whether the plaintiff/creditors could assert *any* cause of action against West Coast Marine as the managing agent for the insurance companies. In this action, however, the court is not faced with the issue of fraudulent joinder and focuses solely on the question of whether in this action for the recovery of the cost of settling the Tobar action, West Coast Marine has a real and substantial interest in the outcome. Second, *Marine Terminals* was a case seeking declaratory judgment that directly implicated West Coast Marine's position as manager and subscriber to the policy at issue. This case, on the other hand, has nothing to do with West Coast Marine's role as the manager for the seven underlying insurers, but rather seeks damages, that if awarded, would have to be remitted to the underlying insurance companies. Accordingly, the *Marine Terminals* decision has no bearing on the outcome of this motion.

### D. *Imposition of Sanctions on Plaintiffs' Counsel*

■■ Finally, the defendants have moved for sanctions against plaintiffs' counsel pursuant to Rule 11(c) of the Federal Rules of Civil Procedure and seek an award of reasonable expenses and attorney's fees incurred in opposing the plaintiffs' motion for remand. By letter dated May 30, 1997, defense counsel advised plaintiffs' counsel that if the motion was not withdrawn, they would make this motion for sanctions. Robert Giuffra, plaintiffs' counsel, responded by letter dated June 3, 1997 that he would not withdraw the motion and in addition, would seek an award of its legal fees and expenses upon successful remand of this action.

The Court has considered defense counsel's request and finds that sanctions are warranted under the circumstances of this action. Under Rule 11(b), an attorney who signs or submits a pleading or written motion certifies to the Court that the motion is not intended to cause a needless increase in the cost of litigation. In the present case, the information necessary to bring this motion to remand has been in plaintiffs' possession since the inception of this lawsuit in 1993, yet

counsel waited until the conclusion of the jury trial to bring this argument to the Court's attention. Counsel's wait-and-see approach to proper motion practice in federal court defies reason and professionalism. In an artful attempt to get yet another bite at the apple after losing in federal court, plaintiffs' counsel allowed an uncompensable amount of judicial resources, including valuable time of citizens sitting for two weeks as jurors, to go forward before bringing a motion that rightfully should have been brought, if at all, years ago. For this reason, plaintiffs' counsel is hereby sanctioned in the amount equal to the amount of defendant's attorneys' fees and costs in responding to this motion. As such, defendants are directed to submit affidavits of fees and expenses incurred in opposing this motion.

## CONCLUSION

In accordance with the opinion above, plaintiffs' motion to vacate the judgment of May 9, 1997 and to remand this action to state court is DENIED in its entirety. In addition, plaintiffs' counsel is sanctioned in an amount equal to defendants' attorneys' fees and costs in responding to plaintiffs' motion, which will be determined upon submissions of affidavits from defendants' counsel.

SO ORDERED.